981 So.2d 988 (2007)
James MYHAND a/k/a James David Myhand, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01801-COA.
Court of Appeals of Mississippi.
August 28, 2007.
Rehearing Denied January 29, 2008.
*990 Robert Sneed Laher, Corinth, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. On December 13, 2004, Agent John Moses, a narcotics officer with the Drug Enforcement Administration in Oxford, Mississippi, began investigating complaints concerning the manufacture of methamphetamine on property owned by Jeff Hilliard in Guntown, Mississippi. Hilliard had recently complained to authorities that he believed someone was manufacturing methamphetamine in an abandoned trailer on his property. Hilliard gave Agent Moses permission to search his property, including the abandoned trailer. Upon arrival at the trailer, Agent Moses found indications that methamphetamine was being manufactured at that site, including starter fluid cans whose sides had been punched out, coffee filters, a propane tank, a homemade hydrochloric gas generator and an eye from a stove. Agent Moses found a plastic card bearing James Myhand's name. This card had a powder on it which was later determined to be pseudoephedrine. Agent Moses also noticed extension cords running from the abandoned trailer to Myhand's house. The ends of these cords had been stripped to expose the copper wiring.
¶ 2. Agent Moses left Hilliard's property and obtained a search warrant for Myhand's house. The next day Agent Moses searched Myhand's house and found approximately fifteen empty blister packs of pseudoephedrine in a burn pile, two propane tanks, one with Myhand's name on it, an empty salt container wrapped in plastic, a garden sprayer with a white mixture inside it consistent with ammonia nitrate and sodium hydroxide, a burnt can marked "denatured alcohol" with a hole punched in its side, two cans marked "starting fluid," and the two extension cords leading from the abandoned trailer next door.
¶ 3. Myhand was present during the search and purportedly told Agent Moses that he had attempted to manufacture methamphetamine but was unable to finish. Myhand further stated that he had traded what he had managed to manufacture in return for methamphetamine. At trial Myhand denied making these statements to Agent Moses. Myhand claimed that he had run the extension cords to the abandoned trailer in order to remodel it. However, Agent Moses found no tools or evidence of ongoing construction work to indicate this was the case. Myhand was taken into custody and released on bond the next morning. The abandoned trailer burned down shortly thereafter.
¶ 4. On August 16, 2005, a jury in the Lee County Circuit Court found Myhand guilty of attempted manufacture of methamphetamine. Myhand was sentenced to twenty years, with ten years suspended, ten years to serve in the custody of the *991 Mississippi Department of Corrections and five years post-release supervision. Myhand was also ordered to pay a $5,000 fine and court costs.
¶ 5. Myhand subsequently filed a motion for a new trial, which was ultimately denied. Myhand now appeals asserting the following issues: (1) his trial counsel was ineffective; (2) the trial court erred in allowing improper rebuttal and redirect; and (3) the trial court erred in denying his motion for a directed verdict and his motion for a judgment notwithstanding the verdict.

DISCUSSION
I. WAS MYHAND'S TRIAL COUNSEL INEFFECTIVE?
¶ 6. In his first issue on appeal, Myhand argues that his trial counsel was ineffective for various reasons. Myhand makes several general statements concerning the effectiveness of his trial counsel, but we will only discuss the specific instances of purported ineffectiveness.
¶ 7. For a defendant to prevail on a claim of ineffective assistance of counsel, he must prove (1) that his counsel's performance was deficient and (2) that he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel is presumed competent. Woodward v. State, 843 So.2d 1, 7(¶ 14) (Miss.2003). "In order to overcome this presumption, the appellant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Phinisee v. State, 864 So.2d 988, 990(¶ 9) (Miss.Ct.App.2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy" and cannot give rise to an ineffective assistance of counsel claim. Cole v. State, 666 So.2d 767, 777 (Miss.1995).
¶ 8. Myhand argues that his trial counsel was ineffective by failing to object to certain testimony by Agent Moses. During direct examination, Agent Moses was asked why he went to Hilliard's property. Agent Moses stated that he had received complaints from people in the area concerning the possible manufacture of methamphetamine by Myhand as well as a complaint by Hilliard that someone was manufacturing methamphetamine on his property. Myhand states that his attorney should have voiced a hearsay objection. Mississippi Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." These statements by Agent Moses are clearly not hearsay as Agent Moses was simply offering an explanation as to his actions in the investigation. See Ratliff v. State, 906 So.2d 133, 139(¶ 21) (Miss.Ct.App.2004).
¶ 9. Myhand also claims his counsel should have objected to supposed expert testimony given by Agent Moses. At one point during his testimony, Agent Moses described the predominant method of manufacturing methamphetamine in the area, also known as the "Nazi method." Myhand argues that this was expert testimony and Agent Moses should have been tendered as an expert witness. Regardless of whether Agent Moses was tendered as an expert, he was clearly qualified to discuss the method of manufacturing especially since this method used many of the exact ingredients and implements found in *992 both the abandoned trailer and Myhand's trailer. Agent Moses is a specialist in methamphetamine investigations, having been to numerous specialized schools on the matter. We cannot find that Myhand's counsel was ineffective in failing to object to Agent Moses's testimony.
¶ 10. Myhand also argues that his trial counsel was ineffective for failing to request a possession of precursors instruction. Myhand states that possession of precursors is a lesser-included offense of attempt to manufacture methamphetamine. Myhand cites no law in support of his theory that possession of precursors is a lesser-included offense, or even a lesser non-included offense, of attempt to manufacture methamphetamine. Furthermore, we note that the punishment for both crimes is exactly the same: a thirty year maximum sentence and fine of no less than five thousand dollars but no more than one million dollars. See Miss.Code Ann. § 41-29-139(b)(1) and § 41-29-313(1)(c). We fail to see how manufacturing methamphetamine could be considered a more serious offense if the legislature saw fit to establish the same punishment as that for possession of precursors. The decision whether to request certain jury instructions is a matter of trial strategy. We cannot find that Myhand's trial counsel was ineffective by not giving the jury the option to find Myhand guilty of a charge which could carry the same punishment.
II. DID THE TRIAL COURT ERR IN ALLOWING IMPROPER REBUTTAL AND REDIRECT?
¶ 11. In his second issue on appeal, Myhand argues that the trial court erred in allowing improper rebuttal and redirect. Specifically, Myhand argues that the State's questioning of Alicia Waldrop, the forensic chemist, was improper during redirect because Waldrop was questioned about the manufacturing process. Myhand also argues that the trial court erred in allowing the State to call Lynn Vaughn, the assistant chief of police in Guntown, to discuss prior conversations with Myhand's wife, Stephanie.
¶ 12. Myhand has failed to cite any authority in support of this assignment of error. It is Myhand's duty to provide support for any assignment of error and, by failing to do so, Myhand's issue is procedurally barred. See Hoops v. State, 681 So.2d 521, 526 (Miss.1996).
III. DID THE TRIAL COURT ERR IN DENYING HIS MOTION FOR A JNOV?
¶ 13. In his final issue on appeal, Myhand argues that the trial court erred in denying his motion for a directed verdict and his motion for a JNOV. Myhand has also failed to cite any authority in support of this assignment of error. Accordingly, this issue is procedurally barred.
¶ 14. THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT OF CONVICTION OF ATTEMPTED MANUFACTURE OF METHAMPHETAMINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TEN YEARS SUSPENDED, TEN YEARS TO SERVE AND FIVE YEARS OF POST-RELEASE SUPERVISION AND FINE OF $5,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.